```
                                                    CLERK'S OFFICE U.S. DIST. COURT
                                                           AT ROANOKE, VA
                                                                FILED
                                                            AUG 12 2008
                                                       JOHN F. CORCORAN, CLERK
                                                       BY:
                                                            DEPUTY CLERK
```

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MERCK & CO., INC., ) | |
| Plaintiff, ) | Civil Case No. 5:07CV00114 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| INTERNATIONAL CHEMICAL ) | |
| WORKERS UNION COUNCIL OF ) | By: Samuel G. Wilson |
| THE UNITED FOOD AND ) | United States District Judge |
| COMMERCIAL WORKERS UNION, ) | |
| LOCAL 94C, ) | |
| Defendant. ) | |

This is an action by Merck & Co., Inc. ("Merck") pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking to vacate an arbitration award in favor of International Chemical Workers Union Council of the United Food and Commercial Workers Union, Local 94C ("the Union"), the exclusive collective bargaining representative for a bargaining unit of production and maintenance employees at Merck's Elkton, Virginia plant. The Union has counterclaimed to enforce the award. The award requires Merck to reinstate an employee, Dale Moubray, who consented to a "last chance agreement" between Merck and the union after Moubray showed up at work under the influence. The last chance agreement required Moubray to enter a counseling and treatment program and comply with all of that program's recommendations and requirements or face immediate termination. Following Moubray's fourth unexcused absence, an absence occasioned by Moubray's desire to take his godson trick-or-treating, his counselor notified Merck that Moubray was not in compliance, and Merck terminated him. The arbitrator ordered Merck to reinstate Moubray and Merk commenced this action to vacate that award. The court finds that the arbitrator's award does not draw its essence

from the last chance agreement and, accordingly, vacates it.

## I.

Merck and the Union were signatories to a master and local collective bargaining agreement providing for the arbitration of disputes. Moubray was a bargaining unit employee at Merck's Elkton, Virginia plant. Moubray reported to work on September 7, 2005 under the influence of alcohol. Rather than terminate Moubray's employment, Merck entered into a "Return to Work & Last Chance Agreement" ("last chance agreement") with Moubray and the Union. Pursuant to that agreement, Merck placed Moubray on an unpaid five-day disciplinary suspension "in lieu of terminating his employment"; Moubray agreed "to immediately meet with the representative of [Merck's] Employee Assistance Plan" to establish a treatment plan; Moubray agreed "to comply with all recommendations and requirements as established by the Employee Assistance Plan and the Health Services Department until such time as he [was] formally released from continued treatment and compliance dealing with alcohol abuse and related disorders"; and Moubray agreed that, if at any time, he became non-compliant with the conditions of the agreement he would be "subject to immediate termination" and that termination would "not be subject to the contractual grievance and arbitration procedures," with the single proviso that in the event of termination Moubray could "file a grievance challenging the facts upon which [Merck] determined that [he] was noncompliant or otherwise in violation of [the] [a]greement."

Merck's Health Services Department referred Moubray to an outpatient treatment program at Rockingham Memorial Hospital called the "Life Recovery Program." There, at the initial session on September 19, 2005, Moubray signed a "patient contract" which established the

2

terms, conditions, and requirements of his participation. Moubray agreed to attend every Monday, Tuesday, and Thursday from 5:15 p.m. to 8:30 p.m. and follow "all relevant patient rules and regulations," and those rules and regulations required "prompt attendance at all scheduled groups . . . except where excused by [his] counselor, Dr., or nurse." He agreed that "if extraordinary circumstances" were to prevent his attendance or were to result in tardiness he would notify the staff "immediately," and he acknowledged that certain "behaviors," including the following, might result in his "premature discharge from the program":

1. Alcohol/drug use that indicates non-compliance with treatment goals.
2. Refusal to submit to alcohol/drug screening (This is considered a Positive result).
3. Physical or verbal abuse of peers, staff or visitors.
4. Failure to participate in treatment activities.
5. Lack of cooperation with program expectations to the extent of impeding progress (This includes chronic tardiness or absenteeism).

Moubray soon had five absences, four of which (October 13, 18, 25 and 31) were un-excused. Moubray did not call ahead of time and secure permission for these absences; Moubray's later-asserted reasons for absences included falling asleep, a water emergency at his home, and going trick-or-treating. As a consequence, the Life Recovery Program wrote Merck that as of November 3, 2005 Moubray "is not in compliance with [its] program requirements," and Merck terminated his employment on November 14, 2005. Moubray filed a grievance and an arbitrator held a hearing and issued an opinion and award requiring Merck to reinstate him. The arbitrator acknowledged Merck's right to terminate Moubray if he had in fact been noncompliant with the last chance agreement, and found that Moubray had four un-excused absences, but concluded that since the Life Recovery Program had not expelled Moubray and he

*believed* he was in compliance, he was in compliance and Merck wrongfully terminated his employment.

## II.

Merck maintains that the court should vacate the arbitrator's award because it ignores the plain language of the last chance agreement and, therefore, fails to draw its essence from that agreement. The court agrees.

The court's role here is not to review the substance of the arbitration award or even the rationality of the arbitrator's approach but to determine whether the arbitrator arguably functioned within the scope of the powers conferred on him by the arbitration agreement. Yuasa, Inc., v. Int'l Union of Electronic, Elec., Salaried, Mach. and Furniture Workers, AFL-CIO, Local 175, 224 F.3d 316, 320 (4th Cir. 2000). Allowing final adjustment of disputes to be achieved through the arbitration process is a policy adopted both by the Labor Management Relations Act, see 29 U.S.C. § 173(d) ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement"), and by the cases interpreting it, see, e.g., United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 566 (1960). Yuasa, 224 F.3d at 320. Indeed, "arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578 (1960). Therefore, this court must defer to an arbitrator "as long as the arbitrator is even arguably construing or applying the contract." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); see also Champion Int'l Corp. v. United Paperworkers Int'l Union, 168 F.3d 725, 728 (4th Cir.1999). This court does not decide the

4

merits of the dispute; it "determine[s] only whether the arbitrator did his job – not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir.1996). The court must enforce the award unless the award "violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong." Champion Int'l, 168 F.3d at 729. Simply put,

> [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

Misco, 484 U.S. at 38. However, an arbitrator who parrots the plain language of a contract and then ignores it, is not "arguably construing" or applying the contract. His award does not draw its essence from the agreement if it "ignored the plain language of the [agreement]." Mountaineer Gas, 76 F.3d at 608; see also Champion Int'l, 168 F.3d at 729. He has no license to stray from the agreement and simply dispense his own brand of industrial justice.

Even with the above principles in mind, which narrowly cabin this court's review, the court vacates the arbitrator's award because it contradicts the express provisions of the last chance agreement. Moubray plainly agreed to comply with "all" treatment program "requirements" and recommendations, which unequivocally include punctual attendance. He also plainly agreed that he was subject to immediate termination if "at any time" he became noncompliant. The agreement says absolutely nothing about

5

expulsion or discharge from the program.[1] Nor can the agreement be read to mean that Moubray is in compliance with all program requirements and recommendations so long as he has not been expelled. Accordingly, the court will vacate the arbitrator's award.

### III.

For the reasons stated, the court finds that the arbitrator's award does not draw its essence from the last chance agreement and will vacate that award.

**Enter:** this 12th day of August, 2008

_____
UNITED STATES DISTRICT JUDGE

---

[1] The arbitrator also made the dubious finding, which this court is compelled to accept as true, that: "importantly, Moubray did not know or believe that he was not in compliance nor did he have any reason to suspect that he was not in compliance." Moubray's subjective belief, however, is no substitute for objective facts. Noncompliance did not become compliance because Moubray thought that it was.

6